UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEGUADALUPE ESCOTO ESQUIVEL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:14-cv-01902 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF JOSEGUADALUPE ESCOTO ESQUIVEL AND AGAINST DEFENDANT CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY |

　　Joseguadalupe Escoto Equivel asserts he is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the decision to deny his applications for benefits. Because the ALJ failed to consider Plaintiff's illiteracy when identifying jobs under the national economy at step five of the sequential evaluation, the decision is **REMANDED** for further proceedings.

**PROCEDURAL HISTORY**

　　Plaintiff filed his applications for benefits on December 17, 2010, alleging disability beginning on May 1, 2009. (Doc. 12-6 at 10, 12.) The Social Security Administration denied Plaintiff's applications at both the initial level and upon reconsideration. (*See generally* Doc. 12-4.) After requesting a hearing, Plaintiff testified before an ALJ on January 17, 2013. (Doc. 12-3 at 33.) The ALJ

determined Plaintiff was not disabled and issued an order denying benefits on March 26, 2013. (*Id.* at 17-24.) When the Appeals Council denied Plaintiff's request for review of the decision on November 10, 2014, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

### A.     Relevant Medical Opinions

Plaintiff visited the office of Dr. John Edwards on March 22, 2010, reporting he had low back pain that was "9/10" without medication, and "3/10 with [medication]." (Doc. 12-8 at 5.) Plaintiff reported he was able to do his activities of daily living and hoped to return to work. (*Id.*)

In July 2010, Plaintiff reported he was working part time but his back pain was "persistent daily." (Doc. 12-8 at 4.) Plaintiff reported he was taking Norco for the pain as well as Celebrex, and the medication kept his "pain at 3/10." (*Id.*) As a result, Plaintiff said he was "able to work [with] meds." (*Id.*) Without the medication, Plaintiff said his pain continued to be a "9/10." (*Id.*)

On April 20, 2011, Plaintiff had an MRI on his lumbar spine due to his continued reports of low back pain. (Doc. 12-8 at 8.) Dr. J. Charles Smith determined Plaintiff had "mild thoracolumbar scoliosis convex right and lower thoracic curvature convex left." (*Id.*) According to Dr. Smith, Plaintiff had "[d]egenerative disc disease . . . at L4-L5 and L5-S1 with mild arthropathy in the articular facets." (*Id.*)

Dr. Dale Van Kirk performed a comprehensive orthopedic evaluation on April 23, 2011. (Doc. 12-8 at 9.) Dr. Van Kirk noted Plaintiff's treatment was mainly medicinal, and Plaintiff had not tried physical therapy, acupuncture, injections, or surgery. (*Id.*) However, Plaintiff used a cane and lumbar corset. (*Id.*) Dr. Van Kirk observed that Plaintiff sat "comfortably," and was able to "get[] up and out

of the chair, walk[] around the examination, and on and off the table without difficulty." (*Id.* at 10.) Dr. Van Kirk also noted Plaintiff was either "unwilling or unable" to walk on his toes or take a few steps in a squatted position. (*Id.*) Dr. Van Kirk diagnosed Plaintiff with "[c]hronic lumbosacral musculoligamentous strain/sprain," which was "likely associated with degenerative disk disease." (*Id.* at 12.) Dr. Van Kirk concluded Plaintiff "should be able to stand and/or walk cumulatively for four hours out of an eight-hour day" but "[d]uring that 4-hour period, he should be able to sit down and rest periodically for a brief period of time should he develop progressive back pain." (*Id.*) He also believed Plaintiff "should be able to sit cumulatively for six hours out of an eight-hour day." (*Id.*) Dr. Van Kirk opined Plaintiff "should be able to lift and carry frequently 10 pounds and occasionally 20 pounds;" and occasionally bend, stoop, crouch, climb, kneel, balance, crawl, push, or pull. (*Id.*) Dr. Van Kirk recommended Plaintiff use his lumbosacral corset and cane "when he is out and about for even and uneven terrain." (*Id.*)

In September 2011, Dr. Edwards observed that Plaintiff walked with a limp. (Doc. 12-8 at 19.) Plaintiff reported his back and leg pain was "worse," and Plaintiff was "developing [a] tolerance" to his medication. (*Id.*) Plaintiff continued to report back pain in October. (*Id.* at 18.) Dr. Edwards opined Plaintiff was "not able to work" because of high dosages of pain medication and chronic back pain on October 20, 2011. (*Id.* at 20.)

Plaintiff continued to report back pain, and in December 2011 he requested an alternative pain medication because Norco was "no longer helping." (Doc. 12-8 at 16-17.) Dr. Edwards prescribed Oxycodone. (*Id.* at 16.)

By February 2012, Plaintiff reported the medication was "helping [with] pain" and gave "better pain relief." (Doc. 12-8 at 15.) In March 2012, Dr. Edwards concluded Plaintiff was stable on the medication and could look for work. (*Id.* at 56-57.) However, in April 2012, Plaintiff "had a severe flare up of back and… left leg pain and numbness [for] three days." (*Id.* at 62.) Dr. Edwards found Plaintiff had a positive straight leg raise test on the left, and requested an MRI scan. (*Id.* at 55, 62.)

On June 29, 2012, Dr. Edwards found the MRI scan showed "a 3-mm broad based disk protrusion which extends into the foraminal areas bilaterally causing compression of the existing L5 roots bilaterally" and "marked degenerative changes of the facet joints at L5-S1." (Doc. 12-8 at 60.)

Further, he noted that Plaintiff had "a positive straight leg raise finding on the left." (*Id.*) Dr. Edwards observed that Plaintiff "ha[d] to ambulate with a cane" and was using "a lot more pain medicine than he [had] in the past to control his back and leg pain." (*Id.*)

On August 18, 2012, Dr. Frank Macaluso performed a bilateral lower extremity venous Doppler study. (Doc. 12-8 at 21.) The study was negative indicating "no evidence of deep venous thrombosis" in either leg. (*Id.*)

In October 2012, Plaintiff told Dr. Edwards that he had pain in his right leg, which he described as "persistent" and "8/10." (Doc. 12-8 at 59.) Plaintiff had a positive straight leg raise test on the right side. (Doc. 12-8 at 59.)

Dr. Henry Aryan completed an evaluation of Plaintiff on January 30, 2013. (Doc. 12-8 at 70.) He indicated Plaintiff's symptoms included trouble sleeping, generalized weakness, and "frequent swelling, inflammation, or stiffness of joints." (*Id*. at 68-69.) In addition, Plaintiff showed "4/5 weakness for bilateral plantar flexion and dorsiflexion," but no other weakness or atrophy was indicated. (*Id*. at 69.) Dr. Aryan diagnosed Plaintiff with a "single level disease at the L5-S1 level," which included "significant disc height loss, fatty endplate Modic type changes, facet joint hypertrophy, and facet fluid." (*Id*.) He further stated Plaintiff experienced micro-instability and neural foraminal narrowing. (*Id*.)

**B.     Administrative Hearing Testimony**

On January 17, 2013, Plaintiff testified at a hearing before the ALJ. (Doc. 12-3 at 31.) He reported that he did not have "any schooling," though he received a welders' certificate in either 1984 or 1985. (*Id.* at 36.) Plaintiff reported he had back pain, which was severe enough to wake him in the middle of the night, and without medication he "cannot get up" out of bed. (*Id.* at 36, 49)

Plaintiff reported that one of his daughters would "help" when he got up in the morning, or "bring the medicine." (Doc. 12-3 at 36.) He reported that he was taking Oxycodone and Celebrex for his pain, which helped "[a] little bit." (*Id.* at 41-42.) Plaintiff reported his pain was exacerbated by "most" activities, and he used a cane for balance, because he felt like his legs were "going to give out. (*Id.* at 42, 47.)

He reported that he spent a majority of the day siting or lying down while watching television.

(Doc. 12-3 at 37.) He said he napped frequently because the medicine put him to sleep. (*Id*. at 38.) Plaintiff also reported that he was no longer able to do household chores, yard work, or participate in social activities. (*Id*. at 36-37.) He testified that he may occasionally microwave something, but he cannot prepare meals for himself or go shopping. (*Id*. at 37; *see also id*. at 35.)

Plaintiff estimated he could stand for five to ten minutes, walk about a block, and lift and carry five to ten pounds. (Doc. 12-3 at 46.) He further stated he could only sit for about 30 to 45 minutes before he experienced numbness in his legs, which was relieved by moving around. (*Id*. at 50.) Plaintiff said he was unable to bend over or squat to pick up items, put on socks and shoes without assistance, or climb stairs. (*Id*. at 47.) Additionally, he asserted he was most comfortable lying down, but he must also move around because his legs would often fall asleep. (*Id*. at 42-43.)

Cheryl Chandler, the vocational expert ("VE") testified after Plaintiff at the hearing. (Doc. 12-3 at 50.) The VE classified Plaintiff's past work —using the *Dictionary of Occupational Titles*[1]—as a cement mason, *DOT* 844.364-010 stating this was heavy, skilled work with a SVP of 7. (*Id*. at 51.) Alternatively, she classified the work as basic construction worker I, *DOT* 869.664-014, which was heavy, semi-skilled work with a SVP of 4. (*Id*.) The VE also stated Plaintiff's skills were only transferable "to the degree that he used them for the light work." (*Id*.)

The ALJ asked the VE to consider "a hypothetical person of the same age, education, and work background," as Plaintiff. (Doc. 12-3 at 51.) The ALJ said the individual "could lift and carry 50 pounds occasionally, 25 pounds frequently; [and] sit, stand, or walk six to eight [hours]." (*Id.*) The person could also occasionally climb ladders, ropes, and scaffolds; and frequently stop, crouch, crawl, climb, kneel, and balance. (*Id.*) The VE opined that because Plaintiff's past work "was heavy," a person with these limitations could not perform the same jobs. (*Id.*) The VE explained the person could "us[e] some transferable skills" to perform the work as a salesperson, general hardware, *DOT* 279.357-010, which is light, semi-skilled work with a SVP of 4. (*Id*. at 52.) In addition, the person could perform work as a tool equipment rental clerk, *DOT* 205.357-014, and as a "cook's helper,"

---

[1] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

*DOT* 317.684-013.  (*Id*. at 52-53.)

Next, the ALJ asked the VE to consider an individual who had the ability to lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand, and walk six to eight hours; and perform occasional postural activities such as "stooping, crouching, crawiling, climbing, kneeling, [and] balancing."  (Doc. 12-3 at 53.)  The VE determined "past relevant work [was] no longer available." (*Id*.)  However, this individual could perform unskilled, light jobs such as laundry worker, *DOT* 302.685-010; ticket taker, *DOT* 344.677-010; and cashier, *DOT* 211.462-010.  (*Id*.)

Third, the ALJ asked the VE to consider a person who could lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand, and walk for four hours; and perform occasional postural maneuvers, but needed a cane to ambulate.  (Doc. 12-3 at 53-54.)  Additionally, the individual could not be exposed to cold and damp conditions.  (*Id*. at 54.)  The VE asserted work as a cashier still existed, but available work was reduced by 90 percent in this field because "a sit/stand option" was necessary.  (*Id*.)  However, the person could perform other work as a counter clerk counter clerk, *DOT* 249.366-010, and courier, *DOT* 230.633-010.  (*Id*.)

**C.    The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of May 1, 2009.  (Doc. 12-3 at 19.)  At step two, the ALJ found Plaintiff's severe impairments included: "lumbar degenerative disc disease and obesity."  (*Id.*)  At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing.  (*Id.* at 19.)  Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, sit for six hours and stand and walk for four hours in an 8-hour day, occasionally stop, crouch, crawl, climb, kneel, balance, push, and pull, should avoid coldness and dampness, and needs a cane for walking.

(*Id.*) The ALJ noted Plaintiff changed age categories while his application was pending from "younger individual… to closely approaching advanced age."  (*Id.* at 23.)  Although Plaintiff was "able to communicate in English," he was illiterate.  (*Id.*)  The ALJ concluded Plaintiff was not disabled under Medical-Vocational Rule 202.18 and Rule 202.11, and called a vocational expert to determine whether Plaintiff was able to work.  (*Id.*)  With the RFC defined above, the ALJ concluded Plaintiff was able to

7

perform "jobs that exist in significant numbers in the national economy." (*Id.*)  Consequently, the ALJ found Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 24.)

## DISCUSSION AND ANALYSIS

Plaintiff contends the ALJ erred at step five of the sequential analysis in finding he is able to perform work in the national economy.  (Doc. 19 at 6-11.)  At step five, the burden shifts to the Commissioner to show that Plaintiff can perform other substantial gainful activity and a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Osenbrock v. Apfel,* 240 F.3d 1157, 1162 (9th Cir. 2001) (discussing the burden shift at step five).  To make this determination, the ALJ may rely upon job descriptions in the *Dictionary of Occupational Titles*, or the ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy."  *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 at *2 ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy.")

### A.     Application of Medical Vocational Rules

Plaintiff contends the ALJ erred by not applying Rule 202.09 of the Medical-Vocational Guidelines.  (Doc. 19 at 6.)  The Medical-Vocational Guidelines, or "grids," are applied at the fifth step of the sequential analysis "and present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant."  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *see also* 20 C.F.R. § 404, subpt. P, app. 2.  As explained by the Ninth Circuit:

> The grids categorize jobs by their physical-exertional requirements, and set forth a table for each category. A claimant's placement with the appropriate table is determined by applying a matrix of four factors identified by Congress--a claimant's age, education, previous work experience, and physical ability. For each combination of these factors, they direct a finding of either "disabled" or "not disabled"  based on the number of jobs in the national economy in that category of physical-exertional requirements.

*Lounsburry*, 468 F.3d at 1114-15.

Plaintiff observes that the ALJ "relied on Medical-Vocational Rule 202.11, which required the person must have previous work experience that is skilled or semi-skilled and are not transferable."

(Doc. 19 at 6.) However, Plaintiff contends the ALJ should have applied Rule 202.09, and found he is disabled. (*Id.* at 6-7.)

Under Rule 202.09, a claimant is disabled if (1) "[c]losely approaching advanced age;" (2) "[i]lliterate or unable to communicate in English;" (3) and his the prior work experience was "[u]nskilled," or he had no work experience. 20 C.F.R. § 404, subpt. P, app. 2, Rule 202.09. Here, Plaintiff contends that he "is closely approaching advanced age, illiterate, and had a previous semi-skilled and skilled job history." (*Id.*) According to Plaintiff, because he "lacks transferable skills," Rule 202.09 directs a finding that he is disabled. (Doc. 19 at 8.)

Significantly, however, Rule 202.09 does not require a finding that a claimant has transferable skills. Rather, the only inquiry is whether a claimant previously worked "unskilled" positions. In contrast, other Grids, such as Rule 202.03, require an ALJ to determine whether the previous work experience was "skilled or semiskilled," and whether such skills were "transferable" to other work in the national economy. Rule 202.09 clearly indicates a finding of "disabled" is only mandated where the claimant did not have any previous work history, or the only prior work was unskilled. It is undisputed that the vocational expert, using *the Dictionary of Occupational Titles*, classified Plaintiff's past relevant work as "skilled" and "semiskilled." (Doc. 12-3 at 51.) Because Plaintiff's work experience was not "unskilled," the Rule 202.09 is inapplicable.

**B.     Plaintiff's Illiteracy**

Plaintiff contends the ALJ also erred at step five of the sequential evaluation by failing to make any determination as to the effect his illiteracy has on his ability to work in the national economy, particularly with the jobs identified by the vocational expert. (Doc. 19 at 9.) Plaintiff observes that, based upon the testimony of the vocational expert, the ALJ concluded he was "capable of performing the work of a courier, cashier, and counter clerk," all of which require "a Language Level 2" under the *Dictionary of Occupational Titles.* (*Id.* at 9.) Under Language Level 2, the following is expected:

> READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> WRITING: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.

SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses.

DOT 230.663-010 (courier), 1991 WL 672160; DOT 211.462-010 (cashier II), 1991 WL 671840; and DOT 249.366-010 (counter clerk), 1991 WL 672323.   Because Plaintiff is illiterate—as the ALJ found—Plaintiff argues he is not able to perform the jobs with the Language Level 2 requirement.[2] Plaintiff contends the ALJ erred by not explaining "how an individual who does not read or write in English could perform the work identified by the vocational expert."  (Doc. 19 at 10.)

The Ninth Circuit has declined to decide whether an ALJ is required to consider a claimant's language skills, including literacy, at step four of the sequential evaluation.  *Pinto v. Massanari*, 249 F.3d 840, 847 n. 5 (9th Cir.2001). However, in *Pinto*, the Ninth Circuit explained:

> The ability to communicate is an important skill to be considered when determining what jobs are available to a claimant. Illiteracy seriously impacts an individual's ability to perform work-related functions such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision. These are all factors that Social Security Ruling No. 96–8P requires an ALJ to consider when determining whether a claimant has the residual functional capacity to perform past relevant work. **Here the ALJ, although noting Pinto's limitation in both his findings of fact and hypothetical to the vocational expert, failed to explain how this limitation related to his finding that Pinto could perform her past relevant work as generally performed**.

*Id.* at 846–847 (emphasis added).

The ALJ asked the VE to consider "a hypothetical person of the same age, education, and work background" as Plaintiff.  (Doc. 12-3 at 51.)  Thus, the vocational expert considered Plaintiff's past work—which required a Language Level 2 skill—when concluding Plaintiff was able to perform work as a courier, cashier, and counter clerk.  (*See id.*)  However, the vocational expert did not explain whether these jobs could also be performed by someone who was illiterate, similar to Plaintiff's past relevant work.  Indeed, the ALJ did not ask the vocational expert any questions regarding the language level requirements of the courier, cashier, and counter clerk positions.

Previously, this Court has determined an ALJ cannot rely upon the testimony of a vocational expert when there is no explanation of how a claimant's illiteracy affects the ability to perform work

---

[2] Illiteracy is defined as "the inability to read or write." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). The regulations explain that the Social Security Administration "consider[s] someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." *Id.*

identified by the expert. *See, e.g., Singmuongthong v. Astrue*, 2010 WL 3715152 (E.D. Cal. 2010); *Her v. Astrue*, 2010 WL 328841 (E.D. Cal. 2010). For example, in *Singmuongthong*, the evidence established that the claimant was illiterate, though her past work required Language Level 1. *Id.* 2010 WL 328841 at *7. The ALJ asked the vocational expert to consider the plaintiff's language levels, but failed to explain the deviation from the *Dictionary of Occupational Titles* in finding that the claimant was able to perform work requiring Language Level 1. *Id.* Therefore, the matter was remanded for further proceedings. *Id.*

Similarly, in *Her v. Astrue*, the ALJ asked the vocational expert to consider the claimant's language when determining the ability to perform past work. *Id.*, 2010 WL 328841 at *6. Although the claimant's past work required Language Level 1, the vocational expert affirmed the availability of past work, without any discussion concerning the deviation. *Id.* at *5-6. As Defendant does here, it was argued that the claimant's alleged language limitations were irrelevant because the claimant performed her past work despite her illiteracy. *Id.* at *6. The Court explained that "[s]uch a statement is not persuasive evidence to support a deviation from a DOT requirement. Although a claimant is not per se disabled if he or she is illiterate, the ALJ must definitively explain why he or she deviates from the DOT's language requirements when finding that a claimant can perform her past relevant work." *Id.* at *6. (citations and quotations omitted).

As in both *Singmuongthong* and *Her*, the record fails to establish that Plaintiff would be able to perform the work identified by the vocational expert given his illiteracy. Indeed, here the ALJ failed to ask the vocational expert to consider Plaintiff's illiteracy. In addition, the vocational expert did not offer any testimony regarding whether one who is illiterate could work as a courier, cashier, and counter clerk while being illiterate, or to explain how a deviation from the learning level identified in the *Dictionary of Occupational Titles* was appropriate. Consequently, the testimony of the vocational expert has no evidentiary value for the ALJ's conclusion that Plaintiff is able to perform work in the national economy.

C. **Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*,

211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the ALJ failed to question the vocational expert regarding Plaintiff's illiteracy, and does not address the apparent conflicts between the vocational expert's testimony and the *Dictionary of Occupational Titles*.  Based upon the record, the Court is unable to determine whether Plaintiff is able to perform work existing in significant numbers in the national economy. Accordingly, a remand for further proceedings is appropriate in this matter.  *See Zavalin,* 778 F.3d at 848 (an ALJ's failure to reconcile apparent conflict was not harmless where the Court "cannot determine [from the record] whether substantial evidence supports the ALJ's step-five finding"); *see also Dieugenio v. Astrue*, 2010 WL 317269 at *3 (C.D. Cal. Jan. 19, 2010) (holding that where the expert claimed that his testimony was consistent with information in the *Dictionary of Occupational Titles* but a review of the descriptions "reveal[ed] a conflict with respect to the jobs identified," failure to address the conflict warranted remand for further proceedings).

## CONCLUSION AND ORDER

Because the ALJ failed to apply the correct legal standards, the testimony of the vocational expert cannot be substantial evidence to support the conclusion that Plaintiff is able to perform work in the national economy.  *See Zavalin*, 778. F.3d at 846; *Rawlings v. Astrue*, 318 Fed. Appx. 593, 595 (2009) ("Only after determining whether the vocational expert has deviated from the *Dictionary of Occupational Titles* and whether any deviation is reasonable can an ALJ properly rely on the vocational expert's testimony as substantial evidence to support a disability determination.")  Consequently, the

ALJ's decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510.  Because the Court finds remand is appropriate for further administrative proceedings, it offers no findings on the remaining issue identified by Plaintiff in his opening brief.

        Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Joseguadalupe Escoto Esquivel and against Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **August 26, 2016**                       **/s/ Jennifer L. Thurston**
                                                                 UNITED STATES MAGISTRATE JUDGE